Good morning, your honors. May it please the court, my name is Max Knutson and I represent the appellant Rachel McDonald. She appeals the district court's order in judgment dismissing her Title VII claims on the grounds that they were untimely filed under 42 U.S.C. section 2000 E-5. And I'd like to start with the language of the statute itself. The operative language following the 180 day conciliation period conducted by the EEOC, if there's not a determination reached, the statute states that the commission shall so notify the person aggrieved and within the 90 days after the giving of such notice, a civil action may be brought against the respondent named in the charge by the person claiming to be aggrieved. So the key language there is so notify. And what the Eighth Circuit case law holds is that adequate notice requires primarily two things, and that's one, conveying information that the aggrieved person has the right to sue, and two, that they have 90 days to do so. And the case law also holds that the burden of conveying this information falls on the EEOC as opposed to the aggrieved person. So with the facts of this case, it is undisputed that the EEOC portal, which was operated via the internet, was the exclusive means by which the EEOC was providing the parties, at least Rachel McDonald, with documents and other information related to her claim. The undisputed evidence also shows that Ms. McDonald and her attorneys lost access to the EEOC portal entirely beginning in mid-January to mid-February of 2022. You know, I hate to do this, but there's a whole line of cases where we have that arise out of like failure to tickle, failure to process efficiently. And I'm just telling you that when I look at this case, it looks like there were too many lawyers with no one in charge. And so you end up in a situation where somebody doesn't have access because of the password, which really is a pretty easy fix, right? I mean, you contact the EEOC and say, we've got a password problem. And I got to believe that's a couple days kind of deal, right? And instead what happens is you've got multiple associates, multiple partners, nobody's in charge of this case, and nobody does anything. And usually what we do here on the circuit court is we say, that looks to me like a malpractice case. That's not an equitable tolling case, especially when you had 41 days or 43 days to actually interpose an answer once you actually got the notice or file your appeal. You would think, and I agree with you, Your Honor, you would think that ordinarily it would be just a matter of a day. But if you look at the record, I think there are 60 or 70 emails where we're asking for this information. We're actively reaching out to the EEOC. We spoke to their IT folks. We're on the phone with them. I filed an application. Is that an exaggerated number of emails, you know what the opposing party says, when you say 60 or a great number of emails and they say very few were in the relevant time period? Well, I would submit to you, Your Honor, it's more than 50. I don't know the exact number off the top of my head. I'd have to pull it from the exhibits. But it's more than 20. And I can tell you that not only is it reflected in the email evidence, we were also making phone calls. And like I said before, the case law holds that it's on the burden of the EEOC to convey this information to the claimant. And when we finally were able to receive this information, we filed suit within 90 days of the conveying that we had the right to sue in 90 days to do so. And I'll go back to the point where we still had 41 days to file once we did receive this notice. That assumes two things. It assumes constructive knowledge that the notice of the right to sue was issued that we didn't have. And it also assumes that the running of the 90-day limitations period begins on the date of issuance. So there's no dispute, we do not dispute that the letter was issued on May 10, 2022. We had no idea it was issued on May 10, 2022. We got some random email from a no-reply email address that said, hey, a document's been uploaded to the EEOC portal. Meanwhile, we're saying we've made a decision, quote, made a decision, unquote. No, there are two emails. There's the first email that... I know there's one on May 10 and May 18. The May 18 one says, quote, made a decision, unquote, in your case, right? Right. But that email, yes, a decision has been made, but there can be two different things coming from the EEOC. It could have been, for all we knew at this time, oh, we found a violation, or no, we didn't. That email does not convey the information required under the statute, and that's you have the right to sue and you have 90 days to do so. The case law holds that you have 90 days from the date you actually learned this information. So regardless of whether or not we had 41 days still, and regardless of whether on June... So does that mean if they mailed it to you and you just didn't open the mail? Well, when it comes through the mail, it's assumed that it's delivered in three days under a circuit law. So you have that presumption working with you. And honestly, had we received it through the mail, we probably wouldn't be standing here today because we would have that assurance and we would have to sign off via certified mail that we had received it. So here we are trying to get this information multiple times, whatever the specific number may be, however many phone calls are made, it's still the burden of the EEOC to provide this information to us. And they were on notice that we did not have this information on multiple occasions. Mr. Counsel, doesn't... I'm going to interrupt you and add on to Judge Kobus' point. Doesn't the lax case from the Seventh Circuit make it a next day rule for emails? You said you have three days mainly, and you're correct. There's case law and a regulation apparently. But doesn't the lax case make it a next day rule? Because there, they did not actually view the contents until the next day. They file it 91 days as opposed to 90, right? Right. So for electronic, it's the next day rule. I don't think that's true, Your Honor, and I'm glad you brought up that case because A, it's a Seventh Circuit case and it's not binding upon the score. True. Although perhaps you may find it unstructured, but I think it's distinguishable on its facts from the present case because the claimant in that case had access, although he had to go into work, he ultimately had access to view the document. He could have used his We don't have access, and the EEOC is made aware of that. The person who has the information to log in is no longer with us. Her email address, for purposes of logging in, was corrupted. So I think the facts of the lax case are distinguishable in that he had the ability to retrieve this information whereas we did not. I want to follow up on that because that was something I wasn't certain of when I read it, and that is that obviously the document showed that you had in your possession her email address and the password, but her email address was actually corrupted so that you could not access it regardless. So that is my understanding. I will submit to you all that some of these events unfolded before I got here, but based on my conversations with our former assistant who was helping the former associate assistant . . . Counsel, is this in the record you're talking about? What you're saying out of judge's ear, is this in the record? Indirectly, Your Honor. The affidavit I filed, I believe I stated that, and same with Peter Dunn that . . . In the district court, did you file this affidavit in the district court? Yes, Your Honor. Yeah, the district court's record here. Proceed. That information was conveyed to . . . and again, we didn't have the opportunity to conduct discovery on this issue. That information was conveyed to the former assistant, like I said, during one of these phone calls that we made to the IT department trying to gain access to the portal. We're shut out. It's like you have a key to a P.O. box with a letter sitting in there, but you try calling the locksmith and the post office and they won't get back to you so you can get in there and get the key. That's the best way I can analogize this case to a circumstance that can be understood. There's one last hypothetical situation I'd like to pose to you all that I think explains this case and why the effect of the district court's order in judgment is to render the 90-day limitations period as having begun from the date of issuance. That hypothetical only changes one fact, and that's assume we continued making phone calls and sending emails to the EEOC asking for log-in credentials, asking for the right to sue letter, and we don't hear back from them. James Gallup did respond to us on June 28th with the document attached. I don't know why that happened when it did, but that's the day he sent us the letter. Imagine we received that email 91 days after May 10th. Assume we received that email 91 days after May 28th. That's the first time we're seeing the information that we have the right to sue. That's the first time we're seeing the information we have 90 days to do so. But lo and behold, we're 91 days have passed. So with that, I'll reserve the rest of my time to answer. And of course, you may, and we'll make it one minute so you know before you're preparing. It'll round up to one minute of time for rebuttal. Okay. Thank you, Your Honor. Sure. Ms. Phillips. May it please the court. Good morning, Your Honor. My name is Jarena Phillips, and I represent the Eppley St. Louis University. This is a fairly simple case about the procedural requirements to assert claims under Title VII. And importantly, as the Supreme Court has held several times, and I quote, procedural requirements established by Congress for gaining access to the federal courts are not to be Your Honors, this court should affirm the district court's decision for two reasons. First, the district court properly found that plaintiff's Title VII claims are untimely. Second, Your Honor, the district court correctly found that the application of equitable tolling was unwarranted in this case. I agree with Judge Erickson, Your Honor, this was a pretty easy fix. The issue here is counsel did not have a password to log into the portal. Isn't the counterargument it turned out not to be a very easy fix, that there were repeated attempts to obtain the password and they were unsuccessful? Your Honor, respectfully, that is counsel's assertion, but it is not supported by the record evidence. If I may, I'll go through the record evidence. The record evidence shows that on January 27th, a lawyer entered an appearance for Ms. McDonald. In that email on January 27th, the lawyer said to an EEOC representative, can you please update me on how I can be added to the portal as a representative? That was it. There was no mention of lost access, and the EEOC representative responded by saying, we've added you to the EEOC portal. That happened on February 1, and these documents are at 111 and 112 at the record, Your Honor. It wasn't until February 15th that counsel did anything to gain access to the EEOC portal. What happened on February 15th is that the EEOC released the university's position statement to counsel. In that release of a position statement to the vice counsel, you have 20 days to submit a response to the position statement. Otherwise, we're going to consider this case submitted. An hour later, counsel first tried to contact the EEOC, and there are several communications, Your Honor, in the record between February 15th and March 9th. That's a 21-day period where counsel is actively trying to get a hold of the university's position statement. That's what the record shows. The record shows that between March 9th and April 12th, there was no attempt to get access to the EEOC portal at all. The record also shows that after the EEOC advised counsel that a decision had been made on the charge of discrimination, counsel literally made no attempt to access that decision. There was no e-mail communication to the EEOC after those May 10th and May 18th e-mail notifications advising we can't get access to the EEOC portal. I thought they did on June 21st. Yes, Your Honor. There were three e-mail communications after the May 18th e-mail. The first e-mail communication was on May 25th. That e-mail communication simply stated, I'm entering my appearance for Ms. McDonald. Can you please let me know how to get, I'm sorry, I'll read the e-mail just so we're clear. This is May 25th? Yes, Your Honor. This is May 25th. A week after the decision's been made even. Yes. And it says, and I quote, I am e-mailing you to advise that I represent Rachel McDonald with respect to the above reference charge. I understand that Mr. Waters is the lead investigator in connection with the claim and that you have both corresponded with counsel at my firm. I request that you please include my representation of Ms. McDonald in your file and also include me on any correspondence moving forward in regards to this claim. That was a week after counsel received e-mail notification that a decision had been made on the charge of discrimination. There was no reference of the May 18th e-mail and that May 25th e-mail communication. There was no mention of any lost access to the EEOC portal in that May 25th e-mail communication. The second e-mail to the EEOC after that May 25th e-mail came on June 7th and it was replying to the e-mail counsel had previously sent. In that June 7th e-mail, again, counsel says I am following up about my representation of Ms. McDonald. Please forward me login credentials so that I may access the EEOC portal. Please also forward me a copy of the SLU's position statement which our office has requested on a number of occasions. We still have not received. In that June 7th e-mail, there was no mention that a decision had been made, that counsel could not get access to that decision that had been made on May 18th. Your Honor, the EEOC on April 27th requested a right to sue. It is important to note that counsel requested a right to sue for the first time on May 10th and the EEOC issued it on April 27th. On May 10th, the e-mail was sent to counsel saying a new document has been uploaded to the EEOC portal. In that June 21 second request for a right to sue, there was no mention of the decision that had been made on May 18th. There is no mention of any lost access to the EEOC portal. So no, the record does not show that there was a six-month-long attempt to try to get access to the EEOC portal. And even if it did show that, Your Honor, on June 28th when counsel received a copy of the right to sue that was dated May 10th, counsel still had 21 days to timely file the lawsuit. I thought 41. Sorry, 41 days, Your Honor. That's right. 41 days to timely file the lawsuit and still did not do so. And this court's holding in Heal v. John Shevick Imports is dispositive on that point, Your Honor. And I also want to just go back and correct the case law. It is well established that a plaintiff must file suit within 90 days of receiving a right to sue from the EEOC. Under Supreme Court precedent, a plaintiff receives a right to sue when the letter is delivered to her attorney. And this court has found time and time again that it doesn't matter when a plaintiff reads the right to sue. It is received when it's delivered to her home. Your Honor, that's what this court's holding in Hells v. Casey and also Williams v. Thompson Court. And it's a Supreme Court ruling, isn't it, too? Yes, Your Honor. That is the Irwin case, which the district court properly relied on to find Ms. McDonald's claims untimely. And, Your Honor... Of course, in Irwin there was actual receipt by counsel, right? That's right, Your Honor. Receipt. Yes, Your Honor. And I think the facts in Irwin are particularly instructive. In that case, the EEOC sent a right to sue letter to the plaintiff and also the plaintiff's lawyer on the exact same date. The plaintiff's lawyer received the letter on March 23rd, meaning the letter was delivered to the attorney's office on March 23rd, but the attorney was out of the country. He didn't see the letter until he got back into the country on April 10th. The letter was delivered to the plaintiff on April 7th. The Supreme Court held that the 90-day filing window began on March 23rd when the letter was delivered to the attorney's law office. That's where the United States Supreme Court started the clock when the attorney received it, even though he was out of the country and didn't actually read the letter until weeks later. And Your Honors, one last point. There's no further questions. The Seventh Circuit's decision in lax is important. In that case, the plaintiff alleged that there was some sort of technical issue where he could not access the portal. It was a real technical issue because in that case, he received an error message when he tried to log in. It was password protected. Yes, Your Honor. It was password protected, and he received an error message when he tried to put in the password. But he was able to do it the next day, and that's where the Seventh Circuit started the clock on the first day where he tried to enter his password, but he couldn't. It was at that point where he had notice of the right to sue, and he also could have figured out how to gain access on that day. That's what the Seventh Circuit said. The Seventh Circuit said there was no reason why he couldn't call the EEOC to try to get access. And also, further... It was clear there was the final agency decision, right? It was, Your Honor. As opposed to here, it just says, made a decision. Those three words, made a decision case. Go ahead. Yes, Your Honor. That's right. And I see I'm out of time. There are no further questions. Seeing none, thank you for the argument. Mr. Knudson? Thank you, Your Honor. Just a few points. To respond to the Supreme Court case that counsel was discussing, I'll just repeat that. Again, that was with respect to a physical mailer. The period of time with respect to which that is assumed to be received applies in that situation. We're dealing with the Internet. The Internet is a fallible system. As much as we may rely upon it in our everyday lives, and although it may be reliable and effective and efficient most of the time, occasionally it's not. And I think this case is a great example where it failed my client, and she should not be prohibited from bringing her claims when she tried to gain access, but was ultimately not able to be provided access until counsel received the right to sue letter directly. So if I understand what your argument is, essentially, is that if they had mailed the letter in a locked box and never sent the key, and you asked for the key and you never got it, well, you didn't get receipt until you actually got the key, right? And so in here, what it is, it comes to you in a black box, it's locked, you can't get in it, you've asked for it, and they don't give it to you until months later, and so we should consider the June date as the date upon which it was received. Well, Your Honor, under those set of facts, I would agree that the time period would be assumed to have begun within three days of the receipt of the physical mailer, but I would argue under those facts that equitable tolling should apply because you physically can't see or access that document. In this court, notice is a jurisdictional requirement and this court has the ability to equitably toll the limitations period. So with that, I ask that you reverse and remand. Okay. That concludes argument. Thank counsel for both their arguments here today. And case number 23-2624 is submitted by decision of the court. The court will be in recess until 9 a.m. Sorry, it's 8.30 a.m. tomorrow morning.